VETTER, EXR., APPELLEE, *v.* HAMPTON, APPELLANT.

228

(No. 77-435—Decided May 10, 1978.)

*Messrs. Kimble, Schapiro, Stevens, Harcha, Young & Clark, Mr. Laurence M. Kimble, Mr. Howard H. Harcha, Jr.,* and *Mr. J. Alden Staker,* for appellee.

*Rudd, Silverberg & Zaharieff Co., L. P. A., Mr. J. Gordon Rudd, Mr. Eric Silverberg* and *Mr. David A. Orlins,* for appellant.

O'Neill, C. J.   In her propositions of law, appellant contends that: (1) "A physician's testimony cannot as a matter of law be dispositive of the issue of an individual's competency * * * when the trier of fact has found that physician's credibility to be strained, and there is probative evidence to rebut the physician's conclusion"; (2) "[t]he trial court's findings on competency and undue influence were not against the manifest weight of the evidence"; and (3) "[a] joint and survivorship account is

an intervivos contract and its validity is based upon contract law, not gift law; consequently, there is no requirement that such a res be delivered from donor to donee."

The first two propositions of law raise a legal issue with respect to the weight to be given the testimony of the physician on the question of the competency of Clara V. Lowe at the time the joint and survivorship account was created.

The trial court found that the evidence failed to establish that Clara V. Lowe was incompetent. In reaching that conclusion, the trial court stated that "the basis of his opinion [the physician's] was rather meager including her refusal to follow his medical advice." The trial court then alluded to other evidence showing that Clara V. Lowe had executed a will, conveyed real estate and that she had conducted "considerable business prior to and after the establishment of the joint and survivorship savings account * * *."

The majority of the Court of Appeals concluded that the physician's testimony that Clara V. Lowe was not capable of managing her affairs was dispositive of the issue of competency "as a matter of law."

The testimony of a physician as to mental competency is not necessarily conclusive on that question "as a matter of law." "It is not doubted that the opinions of physicians touching questions of mental strength or weakness are competent to be given in evidence in cases where those matters are in issue. The weight to be given the evidence in a particular case is to be determined by the jury, as the testimony of witnesses touching any other matter should be determined." *Bahl* v. *Byal* (1914), 90 Ohio St. 129, 135, 106 N. E. 766; Annotation, 86 A. L. R. 2d 1038, 1044. Thus the trial court here, as the trier of fact, was not bound to give conclusive effect to the testimony of the physician.

The third proposition of law challenges the conclusion of the majority of the Court of Appeals that the fact that there was "no delivery" militated against a finding that a gift was intended. The rights of parties to a joint

and survivorship bank account in Ohio are governed by the contract and not by the principles of the law of gifts. *Cleveand Trust Co.* v. *Scobie* (1926), 114 Ohio St. 241, 151 N. E. 373. See *Steinhauser* v. *Repko* (1972), 30 Ohio St. 2d 262, 285 N. E. 2d 55. Thus there is no requirement of delivery.

The creation of a joint and survivorship bank account raises a rebuttable presumption "* * * that coowners of the account share equally in the ownership of the funds on deposit * * *." *In re Estate of Duiguid* (1970), 24 Ohio St. 2d 137, 265 N. E. 2d 287. Nonetheless, "* * * it is always open to the party contending that no valid joint and survivorship contract was created to show the 'realities of ownership.' *Union Properties* v. *Cleveland Trust Co.* (1949), 152 Ohio St. 430, 89 N. E. 2d 638; *Fecteau* v. *Cleveland Trust Co.* (1960), 171 Ohio St. 121, 167 N. E. 2d 890. * * *" *Steinhauser* v. *Repko, supra,* at page 268. In such cases "[w]here the evidence is such that reasonable minds might differ as to the intention of the person creating such an account, a question of fact is presented for the determination of the trial court." *In re Estate of Duiguid, supra,* at page 140.

The case of *In re Estate of Svab* (1967), 11 Ohio St. 2d 182, 228 N. E. 2d 609, is of interest on establishment of the "realities of ownership." In that case, "[s]uch evidence as there was revealed that the transactions concerning the accounts were made for Josephine Svab by Mary Ann Beaver, that the money deposited in the accounts was that of Josephine Svab, and that at the time the joint accounts were created Josephine Svab was relying on her daughter to assist her in conducting her business affairs. There was no evidence of an intention on the part of Josephine Svab to create any personal interest in the accounts in favor of Mary Ann Beaver, who was only one of several children of Josephine Svab, other than the form on the bank signature cards * * *." *Id.,* at page 184.

The court there reasoned, at pages 184-185, as follows: "The logical inference from these facts is that the

use of joint and survivorship accounts was merely a matter of convenience for Mary Ann Beaver, since she was acting in a capacity similar to that of a fiduciary for the decedent. This inference, combined with the fact that the party seeking to uphold the survivorship account is the plaintiff in this action and that the plaintiff was in such a close relationship with the decedent, justifies placing the burden upon Mary Ann Beaver to show that the decedent intended to transfer an interest in the accounts to her.

"We believe that the bank signature cards by themselves do not constitute enough evidence of an intention on the part of Josephine Svab to provide an interest in the survivor to sustain the burden which the particular facts of this case have justified placing upon the plaintiff. Therefore, the conclusions of the Probate Court and the Court of Appeals in denying plaintiff's claim and in including the money in the accounts in the property of the estate were proper."

The trial court in the instant cause concluded that, "absent * * * prevailing evidence" on the realities of ownership of the account, the "contractural [sic] arrangement * * * [should] be upheld." It concluded further that the evidence did "not establish that the joint and survivorship account was created only for the decedent depositor's convenience in handling the funds" or "establish circumstances that would clearly indicate no intent to transfer a present joint interest."

An examination of the record supports the foregoing factual conclusion of the trial court. Consequently, this cause is not controlled by this court's holding in *Svab, supra.*

As noted earlier, the creation of a joint and survivorship bank account raises a rebuttable presumption that the co-owners of the account share equally in the ownership of the funds on deposit. Thus "* * * the party seeking to uphold the joint and survivorship contract * * * is benefited by a presumption that both parties to the contract are rebuttably presumed to share equally in the *res.*" Further-

more, "[i]n the absence of any evidence, that presumption is sufficient, as a matter of law, to sustain a judgment upholding the joint and survivorship contract." *Steinhauser* v. *Repko, supra* (30 Ohio St. 2d 262), at page 269. A party contending that no valid joint and survivorship contract was created by asserting "realities of ownership" must show either that no present interest was created or that no right of survivorship was intended. Inasmuch as the evidence in the instant cause failed to show "realities of ownership" contrary to the terms of the contract, a presumption of validity of the joint and survivorship contract is sufficient to sustain a judgment upholding that contract.

The judgment of the Court of Appeals, therefore, is reversed.

*Judgment reversed.*

HERBERT, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

CELEBREZZE, J., concurs in paragraphs one, two, three and four of the syllabus and in the judgment.

LOCHER, J., concurring. I concur in the opinion, because the facts of the instant case applied to existing law warrant the result reached by my colleagues.

This writer is cognizant that R. C. 1107.08 and 1151.-19 make provision for joint and survivorship accounts. My personal observation is that these accounts are frequently litigated. It is thus apparent that there exists an abysmal flaw in their creation. All too frequently, the parties entering into this type of contractual agreement with banks or savings and loan associations are not *really* apprised of all the ramifications that exist when such a contract is consummated. Often depositors are advised that these accounts are the best way to "avoid probate." Seldom, if ever, are the clerks in banks and savings and loan associations attorneys or well versed in the legal aspects of

this contract. Thus, the end result, in numerous instances, is a defective estate plan that successfully avoids probate at the cost of litigation, great expense, disruption of the deceased's intention and hardship to his family.

The defect is obvious. Being a modern-day creation of legislation, the joint and survivorship account is, in essence, a substitute testamentary disposition stripped of all its normal safeguards. The law of testamentary disposition is simply the culmination of legal reasoning which attempts to insure a knowing and intelligent disposition of the property and thereafter the fulfillment of the intentions of the deceased. Absent similar safeguards applicable to joint and survivorship accounts, the law of contracts insures neither a knowing disposition nor a fulfillment of the true intentions of the deceased, a party to the contract. At the minimum, legislative consideration should be given to requiring that a full and understandable disclosure of the legal implication of this account be given by the financial institution to its depositors. Certainly, this preventive measure would provide at least an understanding of the rudimentary legal consequences of entering into a contract for a joint and survivorship account.